**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

        Plaintiff,

  -against-

ROBERT PFAFF,

        Defendant.

CASE NO. 08 CR 239 RMB

**DEFENDANT'S REPLY IN SUPPORT OF OPPOSITION TO GOVERNMENT'S PROPOSED PROTECTIVE ORDER; SUPPLEMENTAL DECLARATION OF DAVID C. SCHEPER; EXHIBITS**

## I.  INTRODUCTION

Perhaps nothing reveals the degree of cooperation between the government and United Micronesian Development Association, Inc. ("UMDA") more than the most recent round of briefing submitted on June 20 and 23, 2008 (hereinafter, "UMDA Brief" and "Gov. Brief"). Therein, the government offers not a wisp of argument or even relevant authority in support of its motion for a protective order, even though the government bears the burden to do so. (*See, e.g.,* 5/29/2008 Def.'s Opp. Gov. Prop. Prot. Order at 5-6 (citing cases).) Instead, the government's sole concern is that its ally-in-arms, UMDA, be able to press a civil litigation advantage in the Saipan court system, and apart from the tactical benefit to UMDA, the government does not even purport to offer any justification for its proposed protective order. While it may be strategically sound for the government to join in common cause with UMDA in order to unfairly prejudice defendant Robert Pfaff's defense in the Saipan case (and hence gain an advantage for itself in the criminal case), the tactic does not help the government meet its burden under Rule 16.

1

Unlike the government, UMDA does not even attempt to hide its strategic goals. UMDA wants to prevent Mr. Pfaff from using its documents to rebut its civil claims and hopes this Court will interject itself into a discovery dispute pending in Saipan. UMDA has thus far refused to produce even a single document in the Saipan civil litigation – including those it already provided to the government in New York – arguing that Mr. Pfaff's assertion of his Fifth Amendment privilege to be free from self-incrimination excuses UMDA's discovery obligations. Whether UMDA's excuse has any merit is ultimately a question for the Saipan judge. If the Saipan court decides that Mr. Pfaff was too aggressive in asserting his Fifth Amendment privilege,[1] it should be the Saipan court's decision as to what evidence, if any, should be excluded at trial (whether through sanction or otherwise), or what documents may be used in pre-trial proceedings. The decisions in the civil case are ultimately decisions for the Saipan judge.

The government and UMDA are correct that this motion concerns an "end run," but it is their "end run", not Mr. Pfaff's, that is of concern. UMDA, with the assistance of the government, seeks to short circuit the Saipan proceedings, by asking this Court to bar Mr. Pfaff's use of UMDA's own documents in the Saipan civil case, regardless of what the Saipan court rules. Mr. Pfaff merely requests that he may show witnesses and the Saipan court the documents (with confidential information redacted) the government has already provided to Mr. Pfaff's lawyers, unless or until the Saipan court orders otherwise. If for whatever reason the Saipan court believes that this very limited use of the documents is inappropriate, it is fully competent to

---

[1] Indeed, Judge Kaplan, who is presiding in *United States v. Stein*, recognized what UMDA fails to understand. When Judge Kaplan was considering the Fifth Amendment's application to related civil cases, he stated that the criminal defendants, including among others, Mr. Pfaff, "would be crazy" if they did not invoke the Fifth Amendment privilege, and if the defendants did not, "their lawyers would be guilty of malpractice." (*See Klamath Strategic Investment Fund v. United States*, M-85 (LAK) (S.D.N.Y, July 24, 2006) at 16:24-17:5 (Judge Kaplan), attached to the Supplemental Declaration of David C. Scheper, at Ex. 18.)

issue orders in the civil case to expand or contract the limited use proposed by Mr. Pfaff.

Defendant Pfaff respectfully suggests that the Saipan court, and not this Court, is best equipped

to rule on Saipan evidentiary matters, including the propriety of UMDA's discovery actions and

the scope of Pfaff's Fifth Amendment privilege..

II.    **LEGAL ARGUMENT**

     **A.**    <u>**Defendant Pfaff Did Not Violate the Protective Order as UMDA and the**</u>

         <u>**Government Insinuate**</u>

     Before reaching the weaknesses in the government's position, it is important to clarify

one factual point.  Both the government and UMDA suggest to this Court that counsel for Mr.

Pfaff have violated the interim protective order in two ways, first by releasing or showing

documents to counsel for codefendants in the Saipan litigation (UMDA Brief at 2-3, Swanson

Decl. Ex. A), and second by alluding to the contents of certain documents in a recent court filing

(UMDA Brief at 2-3, Swanson Decl. Ex. B; Gov. Brief at 3 n. 1).  There is no foundation to

either allegation.

     There is no truth to the charge that counsel have released or shown documents to any

person other than our client or to our own attorneys; the attached Supplemental Declaration of

David C. Scheper ("Supplemental Scheper Decl.") puts that to rest.  The allegation is false; none

of the documents provided by the United States Attorney have been shown or provided to

anyone other than Mr. Pfaff's own attorneys and Mr. Pfaff.  (*See* Supplemental Scheper Decl. at

¶¶ 2-5.)

     As to whether the interim protective order prohibited Mr. Pfaff's lawyers from alluding to

the contents of certain documents in connection with a court filing in Saipan, the government

does not come right out and say this. Instead, citing UMDA's June 23 submission, the

government writes in a footnote that

> Pfaff also has not sought relief from the interim protective order
> signed by this Court. Notwithstanding that, Pfaff arguably made
> "use" of the documents by arguing the contents of those documents
> in papers recently filed in the civil litigation in Saipan.

(Government's Memorandum of Law at 3, fn. 1). The government's position is troubling in two

respects.

First, the parties appeared in this Court on June 3, 2008 precisely to address the

parameters of the interim protective order. In a brief filed on May 29, defendant Pfaff argued

that the government had made no showing that *any* protective order was needed. Mr. Pfaff

further argued that in the event the Court concluded that a protective order should issue, the

interim order should be modified in Paragraph 1 expressly to allow the use of the documents in

the Saipan litigation. (*See* Defendant Pfaff's May 29 Brief at 2). So the government's statement

that "Pfaff has not sought relief" is patently wrong. Such relief is what the Court preliminarily

considered on June 3 and will further consider on July 8, the date of the next court hearing.

Even more troubling about the government's footnote is the suggestion that Mr. Pfaff or

his counsel has already "arguably" violated the interim order. The Court will recall that the

interim order that it signed was drafted by government counsel and presented to the Court by the

government on Tuesday, May 20. The government's submission of the interim order capped a

week of telephone conversations, correspondence and email exchanges between counsel for the

government and Mr. Pfaff. (*See generally* May 29, 2008 Declaration of David C. Scheper and

Exhibits thereto). Exhibit 1 to that declaration was Mr. Scheper's May 19 letter to government

counsel. In the third paragraph of that letter, Mr. Scheper alluded to government counsel's

"email of Friday afternoon." That email and the string of emails that preceded it were not

4

provided by the government, but are attached to the Supplemental Scheper Declaration

collectively as Exhibit 16 (the next consecutive number supplementing the May 29 Scheper

Declaration), and reads as follows:

> Dave: Please propose some alternative language. How about "will
> not physically disclose or physically share in any way"? The [sic]
> allows the "leads" use from reading the documents. Please let me
> know you [sic] views by Monday morning (my time). I hope to
> work this out with you, but failing that I plan to submit a proposed
> order to Judge Berman. Best, Stan .

Based upon the foregoing email exchange, counsel for Mr. Pfaff reasonably concluded that the

government's intended prohibition on "use" extended to "physically disclos[ing] or physically

shar[ing]" the discovery materials with persons other than defendant himself, his attorneys, or

witnesses in the criminal case. It was that limitation and more fundamentally, the

appropriateness of entering *any* protective order that was before the Court. Those issues gave

rise to our May 19 letter and our May 29 Brief, and give rise to this filing.

In summary, Mr. Pfaff has not violated the interim order through any of the means

alleged, and the government knows this. As set forth below, defendant Pfaff continues to seek

only the means of defending himself both here and in Saipan with materials already in his

possession.

**B.**     **The Government Has Failed To Carry Its Burden**

Turning to the merits of the instant motion, the government's brief fails to carry – or even

acknowledge – its burden of establishing that a protective order is necessary under Rule 16.

Instead, the government seems to believe that it is Mr. Pfaff's burden to provide some "authority

…commanding or compelling that Pfaff be entitled to use criminal discovery in a parallel civil

litigation." (Gov. Brief at 4.) Not so. It is not for Pfaff to prove his right to use UMDA's

documents that are already possessed by his lawyers, but rather for the government to prove why

he *cannot.* As this Court recognized at the June 3, 2008 hearing, the question is not why should Mr. Pfaff have that right, but "why not; it happens all the time." (Scheper Decl. Ex. 17 (6/3/08 Hearing Transcript) at 2:20).

**C.    The Government and UMDA Seek to Involve This Court in the Saipan Proceedings and Trump the Saipan Court's Evidentiary Rulings**

In addition to misstating the burden, the government and UMDA misstate the question. Obviously, Mr. Pfaff and his counsel already know what information the UMDA documents contain because those documents have already been provided to Mr. Pfaff. Nor could the government, or UMDA, or the Saipan court, or this Court deny Mr. Pfaff and his counsel the right to review those documents, without causing a serious due process violation. As a result, the inquiry cannot be, as both UMDA and the government frame it, "whether Pfaff is entitled to receive these materials." (Gov Brief at 3, UMDA Brief at 1.) He already has them, and rightfully so.

A typical protective order would seek to bar dissemination of *confidential information* to those who are tangential to the criminal action. For example, the authorities cited by the government, which address challenges to protective orders by the press (but not by parties) state that documents should be withheld from the public when, *e.g.*, their disclosure might disclose sensitive information. *See, e.g., U.S. v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir 1995). However, the divergent positions of Mr. Pfaff on the one hand and the government and UMDA on the other, have nothing to do with privacy or confidentiality. As counsel has already previously agreed, Mr. Pfaff has no objection to restricting public access to private or sensitive information. Instead, the differing positions concern the *use* of information by a *party*.

6

Put another way, the government and UMDA confuse *confidentiality* with *evidence*. It is difficult to see how, or why, this Court has any interest in determining that the documents UMDA produced are *admissible or not as evidence* in a civil action, pending outside the federal court system, in the sovereign courts of the Commonwealth of the Northern Marianas Islands. Whether UMDA's own corporate documents may be used to impeach or even refute its claims on a summary judgment motion or in pretrial proceedings, and how those documents may be presented, if at all, to a Saipan jury, is a question properly determined by the Saipan court. Issuing a protective order that limits the disclosure of UMDA's documents to witnesses and the Saipan court preserves the ability of the Saipan court to shape any appropriate order concerning UMDA's conduct or Mr. Pfaff's Fifth Amendment privilege.

In words, the government concedes the point, noting that "the Court should allow the Saipan court to define the appropriate boundaries, and uses, of discovery in this matter." (Gov Brief at 4.) But this laudable goal is betrayed by the actual protective order sought by the government, which strictly limits Mr. Pfaff from even the limited use of the documents apart from "preparing for and conducting the trial [and appeals] in this action and *United States v. Stein...*" (Scheper Decl. Ex. 5). Rather than reserve the Saipan court's authority to decide what is and is not admissible in Saipan, the proposed protective order would have this Court pre-judge the potential use of the documents as evidence in Saipan. Despite the government's lip service to notions of comity, if the Court granted the proposed protective order, Mr. Pfaff would be unable to show witnesses or the Saipan Court any of the documents *regardless of what the Saipan court ordered*, making the Saipan court's evidentiary decisions a nullity.

In contrast, Mr. Pfaff agrees that the Court should let Saipan judges decide matters of Saipan evidentiary law, and therefore, the restrictive protective order proposed by the

7

government must be rejected.[2] Nothing in Mr. Pfaff's proposed language *requires* that the evidence be admissible in Saipan, only that Mr. Pfaff's counsel be permitted, absent a contrary order of the Saipan court, to show documents to witnesses in depositions and to the Saipan court in court filings.

### D.    No Authority is Offered To Support UMDA and the Government's Position

Neither the government nor UMDA offer any authority in support of their shared position that this Court impose the interim protective order and thereby dictate the admissibility of evidence in another sovereign court, because none can be found. UMDA fails to cite a single case, and the government's authorities, *U.S. v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) and *U.S. v. Luchko*, 2007 WL 1651139 (E.D. Penn. 2007), are irrelevant. Both cases concern the *public's right of access* through the press, *not the litigant's limited right to use the discovery in other cases. Amodeo* concerned a motion brought by Newsday, seeking disclosure of a special master's confidential report. The Second Circuit reversed and remanded based on the journalists' inadequate interest in disclosure. *Luchko,* on the other hand, concerned a motion brought by Philadelphia Newspapers, LLC challenging a protective order that was *stipulated to by defendants*, which the district court denied. The two cases shed no light here, where the

---

[2] Equally unsupported is UMDA's claim that it seeks only to prevent "serious prejudice [to] UMDA and its ability to prosecute the civil case." (UMDA Brief at 4.) This is another evidentiary argument, since UMDA cannot bar Mr. Pfaff's access to the documents, and can only block its admissibility in Saipan. Moreover, since the documents at issue are UMDA's own business records, it is hard to see how Mr. Pfaff's use of them with witnesses and the Saipan court would constitute prejudice. If UMDA's claims are supported by its records, then the records bolster the claims and there is no prejudice. If, on the other hand, the documents are evidence that impeach UMDA's civil claims, disclosure is a matter of simple fairness, not prejudice.

government and a civil litigant combine to prevent the criminal defendant from proffering a defense in the civil action.[3]

**E.**    **The Government's Acquiescence To the Request That Non-UMDA**

**Documents Be Disclosed Undercuts Its Position**

In its brief, UMDA informs the Court that in the event Mr. Pfaff is authorized to show UMDA documents that he received from the government in discovery to the Saipan court or to Saipan witnesses, UMDA has obtained the government's consent that it be able to receive, from defendant Pfaff, documents that Mr. Pfaff received in criminal discovery that the government obtained from sources other than UMDA. (UMDA Brief at 5; Swanson Decl. ¶ 4). This remarkable revelation does two things: first, it eliminates any doubt about the government and UMDA collaborating to prejudice Mr. Pfaff; and second, it disposes of the last thread of legitimacy in the government's position on the protective order.

The government proposes to grant a civil litigant access to material collected through the compulsory process of the grand jury, with nary a care as to the protection of the confidential information or sensitive matters contained therein. The government has not, for example, ascertained (at least to our knowledge) whether the individuals and entities who provided that information would have been as forthcoming or cooperative if they had known that the documents would be turned over to a private civil litigant (and presumably, the entire Micronesian people, *see, e.g.,* 5/29/2008 Def.'s Opp. Gov. Prop. Prot. Order at 7 (citing cases and Scheper Decl. submitted therewith at Ex. 15 at 3)). *See, e.g., Amodeo,* 71 F.3d at 1050

---

[3] Moreover, *Luchko* articulates the burden of proof that the government ignores: "it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of protection[.] Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure..." *Id.* at *6 (citations omitted).

(finding that witnesses are less likely to come forward if their evidence is automatically made public). Nor does the government seem to care about the relevance of those documents, or that the "non-UMDA" documents are not "currently the subject of litigation in the CNMI court." (UMDA Brief at 5.) Indeed, the documents have not even been requested by UMDA in discovery.

Both UMDA and the government claim they do not want this Court to inject itself into the Saipan proceedings. Yet the wholesale disclosure of non-party documents to a third party active in a civil case against a criminal defendant, would do exactly that. The government proposes to give UMDA non-party documents, without regard to the civil rules in Saipan, and without regard to UMDA's right to these papers under Saipan law. The government is willing to give UMDA access to these non-party documents without any regard for the fairness of this disclosure – apparently the government expresses concern about the prejudice to the parties in Saipan, except when the prejudice is to Mr. Pfaff, in which case the government is silent.

## III.    CONCLUSION

In their briefs, UMDA and the government turn all notions of federalism and comity on their head, by asking this Court to preemptively bar the use of certain evidence in the Saipan courts. What is worse, both claim to do the opposite, although the truth is belied by the language in the protective order itself. Mr. Pfaff already has the documents – what is left to be determined is the evidentiary use of the corporate records in Saipan. This Court should preserve for the Saipan court the ability to fashion whatever orders it deems appropriate given UMDA's discovery conduct and Mr. Pfaff's Fifth Amendment privilege. If the Court were to issue any protective order at all, as suggested in our May 29 Brief at page 2, allowing counsel to show the

documents to witnesses and the Saipan court itself, subject to the Saipan court's orders that may regulate, exclude or admit the documents.

DATED: July 1, 2008

Respectfully submitted,

OVERLAND BORENSTEIN SCHEPER & KIM LLP

By: _____

David C. Scheper (SB 120174)
601 W. Fifth Street, 12th Floor
Los Angeles, CA 90071
(213) 613-4655

Attorneys for Defendant Robert Pfaff

11

# SUPPLEMENTAL DECLARATION OF DAVID C. SCHEPER

## SUPPLEMENTAL DECLARATION OF DAVID C. SCHEPER

I, DAVID C. SCHEPER, declare and state:

1.      I am counsel of record for defendant Robert Pfaff. I know the matters

stated below to be true of my own personal knowledge. I submit this declaration in

response to allegations contained in the government's June 23 Memorandum of Law and

UMDA's June 20 submission concerning alleged violations of the Interim Protective

Order issued by the Court on May 22, 2008.

2.      Government counsel Stanley J. Okula, Jr. drafted the interim protective

order in this case and submitted it to the Court on May 20, 2008. On May 16, 2008, four

days before Mr. Okula submitted the order to the Court, he wrote an email to me

explaining what uses he meant for the interim order to proscribe. A copy of Mr. Okula's

email, along with a series of emails between us earlier in that email chain, is collectively

attached hereto as Exhibit 16. In the email, Mr. Okula wrote:

> Dave: Please propose some alternative language. How
>
> about "will not physically disclose or physically share in
>
> any way"? The [sic] allows the "leads" use from reading
>
> the documents. Please let me know you [sic] views by
>
> Monday morning (my time). I hope to work this out with
>
> you, but failing that I plan to submit a proposed order to
>
> Judge Berman. Best, Stan

3.      As the Court is aware, my firm represents Mr. Pfaff in the instant criminal

matter as well as in the Saipan litigation. Neither I nor any lawyer or employee of the

firm have physically disclosed or physically shared in any way with any one (other than

our client) any documents that we have received from the United States Attorney's Office

for the Southern District of New York. This includes, of course, counsel for any codefendant in the Saipan litigation.

4.    In connection with a recent court filing, my colleague Mark Borenstein referred to the contents of certain documents in order to explain to the Saipan Court defendant Pfaff's position in a discovery dispute. That court filing is Exhibit B to the declaration of UMDA's attorney, Edward Swanson. Mr. Borenstein acted in a fashion consistent with my direction and based directly upon my straightforward interpretation of how the drafter of the interim protective order, Mr. Okula, defined, on an interim basis, an improper use of the discovery, namely, "physically disclosing or physically sharing" any piece of paper with anyone other than our client, our own attorneys, or witnesses in the criminal case.

5.    While my partner, Mr. Borenstein, is principally responsible for overseeing the Saipan litigation, I am involved as well. We believe that in order to defend Mr. Pfaff in Saipan, we need to be able to show documents to witnesses and to the Court. We will protect, through redaction, any sensitive corporate information or private material.

6.    Attached hereto as Exhibit 16 is a true and correct copy of a series of email correspondence between me and Mr. Stanley Okula of the United States Attorney's Office.

7.    Attached hereto as Exhibit 17 is a true and correct copy of an excerpt of the transcript of this Court's June 3, 2008 hearing in the matter of *United States v. Pfaff*.

7.    Attached hereto as Exhibit 18 is a true and correct copy of an excerpt of the transcript of this Court's July 24, 2006 hearing in the matter of *Klamath Strategic Investment Fund v. United States*, conducted before the Hon. Lewis A. Kaplan.

I swear under penalty of perjury that the foregoing is correct. Executed this 1st day of July, 2008.

_____
DAVID C. SCHEPER

# EXHIBIT 16

## David C. Scheper

**From:**       Okula, Stan (USANYS) [Stan.Okula@usdoj.gov]
**Sent:**        Friday, May 16, 2008 2:24 PM
**To:**          David C. Scheper
**Subject:**     RE: Pfaff Conference

Dave: Please propose some alternative language. How about "will not physically disclose
or physically share in any way"? The allows the "leads" use from reading the documents.
Please let me know you views by Monday morning (my time). I hope to work this out with
you, but failing that I plan to submit a proposed order to Judge Berman. Best, Stan

-----Original Message-----
From: dscheper@obsklaw.com [mailto:dscheper@obsklaw.com]
Sent: Thursday, May 15, 2008 5:50 PM
To: Okula, Stan (USANYS)
Subject: Re: Pfaff Conference

Remain stuck will try later unless too late. I do not like the "disclose or share in any
way" language from your email. It seems not consistent with our discussion of leads, etc
Sent via BlackBerry by AT&T

-----Original Message-----
From: "Okula, Stan (USANYS)" <Stan.Okula@usdoj.gov>

Date: Thu, 15 May 2008 14:02:10
To:<dscheper@obsklaw.com>
Subject: RE: Pfaff Conference


If calling, please reach me in White Plains --- 914-993-1961

-----Original Message-----
From: dscheper@obsklaw.com [mailto:dscheper@obsklaw.com]
Sent: Thursday, May 15, 2008 1:23 PM
To: Okula, Stan (USANYS)
Subject: Re: Pfaff Conference

I will try my best to speak to you today or tomorrow am. Behind schedule on other matter
today thx
Sent via BlackBerry by AT&T

-----Original Message-----
From: "Okula, Stan (USANYS)" <Stan.Okula@usdoj.gov>

Date: Wed, 14 May 2008 17:03:08
To:"David C. Scheper" <dscheper@obsklaw.com>
Subject: RE: Pfaff Conference


Pfaff Conference

David: I sent you a draft of the protective order but have not heard back from you. I
know you said that you would not quarrel with a day or two while we try to work out terms,
but I'm concerned that we are going past a Court deadline. One way to deal with it is to
get an interim agreement from you that none of the discovery will be disclosed or shared
in any manner or from until an order or other agreement is entered. Please advise. Stan


From: David C. Scheper [mailto:dscheper@obsklaw.com]
Sent: Tuesday, May 13, 2008 6:17 PM
To: Okula, Stan (USANYS)
Subject: RE: Pfaff Conference

1

Stan,
Is there a protective order that you have in mind, I'm happy to review it and comment?
One of my concerns with your email arises from the fact that this firm is involved in
parallel civil litigation.
I will be travelling the rest of this week but will make some time, probably on Thursday,
to discuss with you, but please feel free to submit a proposed P.O. as a starting point.
Dave Scheper


David C. Scheper
 Overland Borenstein Scheper & Kim LLP
 601 West Fifth Street, 12th Floor
 Los Angeles, CA 90071-2025
 213.613.4670
 213.613.4656 Fax
 dscheper@obsklaw.com




----------------

From: Okula, Stan (USANYS) [mailto:Stan.Okula@usdoj.gov]
 Sent: Tuesday, May 13, 2008 5:32 AM
 To: David C. Scheper
 Subject: RE: Pfaff Conference


David:

 Are you available to speak today?  The discovery is in place, but I want to discuss a
protective order with you, or a stipulation about your use of the documents.  I assume
that you have no problem agreeing that, in connection with the discovery in this case, no
use or disclosure of the information made available in discovery will be employed for any
purpose but in the SDNY cases.  Please advise.

Stan

From: David C. Scheper [mailto:dscheper@obsklaw.com]
 Sent: Monday, April 07, 2008 7:07 PM
 To: Okula, Stan (USANYS)
 Cc: Mercandetti Laura
 Subject: RE: Pfaff Conference

Stan and Laura,
We are good for 9 am on April 15 at Judge Berman's court, see you then, and thank you.
David Scheper


David C. Scheper
Overland Borenstein Scheper & Kim LLP
300 South Grand Avenue, Suite 2750
Los Angeles, CA 90071
213.613.4670
213.613.4656 Fax
dscheper@obsklaw.com




----------------

From: Okula, Stan (USANYS) [mailto:Stan.Okula@usdoj.gov]
 Sent: Monday, April 07, 2008 8:41 AM
 To: David C. Scheper
 Cc: Mercandetti Laura

2

Subject: Pfaff Conference

Dave:  Christine Murray, Judge Berman's law clerk, just called saying that they are moving the conference from the 14th to the 15th, at the same time.  The change is fine with me. Please advise.  I'm happy to work with you, but don't want to move it out of that week because of the delays already attendant to getting the arraignment done.  Best,  Stan

Stanley J. Okula, Jr.
Assistant United States Attorney
Southern District of New York
One St. Andrews Plaza
New York, New York 10007
212-637-1585 (ph)
212-637-2429 (fax)
stan.okula@usdoj.gov

# EXHIBIT 17

1

```
     8634PFAC
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ----------------------------x
 2
 3   UNITED STATES OF AMERICA
 3
 4              v.                        08CR239(RMB)
 4
 5   ROBERT PFAFF,
 6                   Defendant.
 6
 7   ----------------------------x
 7
 8                                   New York, NY
 8                                   June 3, 2008
 9                                   11:20 a.m.
 9
10   Before:
10
11                HON. RICHARD M. BERMAN
11
12                                   District Judge
12
13                      APPEARANCES
13
14   MICHAEL J. GARCIA
14        United States Attorney for the
15        Southern District of New York
15   STANLEY JOHN OKULA
16        Assistant United States Attorney
16
17   DAVID SCHEPER
17        Attorney for Defendant
18
19
20
21
22
23
24
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

8634PFAC

```
 1          (Case called)
 2          THE COURT:  I am exactly sure that I understand the
 3  difference between the two sides on the appropriateness of the
 4  protective order in this case.  Tell me if I am wrong, but it's
 5  proposed that there be a protective order not dissimilar to the
 6  one that Judge Kaplan issued in his case.  So, presumably you
 7  want it similar there, similar here.  I thought I saw that the
 8  defense would agree to that.  They also want a civil action to
 9  be impacted, to be able to use the documents in a civil action;
10  isn't that right.
11          MR. SCHEPER:  Yes, your Honor.
12          THE COURT:  Why is it that you two can't work
13  something out with respect to that.
14          MR. OKULA:  If I may, your Honor.
15          THE COURT:  That's the way I understand the difference
16  between the two of you; I may be wrong about that.
17          MR. OKULA:  That's the fine issue.  I don't think it's
18  appropriate for the defendant to be able to use the discovery
19  in this criminal litigation for the civil litigation.
20          THE COURT:  Why not; it happens all the time.
21          MR. OKULA:  There are all sorts of disputes.
22          THE COURT:  If there are confidential pieces of
23  information, I understand that, but just because they get a
24  document in your discovery that is not usable, assuming it
25  didn't have sensitive confidential information, why couldn't
```

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

3

8634PFAC

1  they use it somewhere else.
2          MR. OKULA:  That's been invoked --
3          THE COURT:  Why shouldn't they be able to argue to the
4  judge in the civil case, I am not really interested in
5  impacting the judiciary all over the place, why couldn't they
6  go to that judge, if they impacted you or some corporation,
7  they could I suppose file an opposition and say, judge, this is
8  so confidential and so important that this has to be treated as
9  confidential.
10         MR. OKULA:  Because it's going to require us
11  essentially to go through the mountains of information that are
12  at issue here.  Judge, it is a significant burden and it's one
13  of the prime, one of the significant bases upon which Judge
14  Kaplan issued his protective order in that case basically
15  recognizing that across the board discovery orders --
16         THE COURT:  You have to make the submission here
17  before I would reach that conclusion stronger than what I have
18  seen so far.
19         MR. OKULA:  I would be happy to lay out the scope of
20  the discovery and set forth the purpose.
21         THE COURT:  No, it is not the scope of the discovery.
22  It's not a burden necessarily; the government has tremendous
23  resources.  It's why as opposed to a policy of openness that we
24  usually have, again, if you have some document that talks about
25  a cooperator, somebody needs to be protected, all of that, or

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

4

8634PFAC

1    someone's Social Security number, I understand all of that.
2           But I don't understand why just, what if you have a
3    prospectus from some company; you are saying he can't use the
4    prospectus in a civil case.  There couldn't be a more public
5    document than a prospectus.
6           MR. OKULA:  I have no problem with publicly available
7    documents; perhaps we could carve out that.
8           THE COURT:  There is one carve-out there.  My sense is
9    you have not talked enough about what you could and couldn't
10   agree on.
11          MR. OKULA:  I think the issue is this, your Honor.
12   There is a separate civil litigation going on there; there is a
13   judge presiding over the discovery that is or is not
14   appropriate in the separate civil forum.  If one party has
15   access merely by dint of being involved in a separate criminal
16   case to a universe of documents that others don't have access
17   to, then --
18          THE COURT:  Is that the carve-out; you don't have any
19   objection to any document that others have access to.  I don't
20   want to get an answer right now.  I think you should talk a
21   little more.  I think there is probably more common ground or
22   could be and should be that helps me along towards disclosure
23   without doing injustice to each of your positions.
24          MR. OKULA:  I would be happy to do that, your Honor.
25   I have been in discussions with counsel for UMDA whose
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

5

8634PFAC

1  discovery is principally at issue here, although there are
2  mounds of other confidential and statutorily protected
3  information that I think absolutely would be covered in the
4  form of tax returns.
5          THE COURT:  That is something else.
6          MR. OKULA:  I have spoken with counsel for UMDA.  They
7  are aware of the conference today and the argument.  I plan to
8  include in our submission to your Honor, in the event we don't
9  reach agreement with Mr. Scheper, Mr. Swanson, the attorney
10  representing UMDA, wants to be heard also and he planned to,
11  probably in conjunction with our submission, submit some
12  papers.  What I suggest most respectfully is a short period of
13  time for Mr. Scheper and the government to speak, see if we can
14  work it out; if we don't, we will propose a period of time,
15  very short period of time we get in a submission to your Honor.
16          THE COURT:  No problem.  I would suggest you emphasize
17  the first part of that two-part process but, yes, that's a good
18  way to go about it.
19          MR. OKULA:  One additional issue; it came over the
20  last week.  What happened is, when UMDA prepared essentially a
21  database so we can make the discovery more easily searchable
22  for the defense, they loaded certain documents on to a
23  presentation software, provided it to us, we then provided it
24  to defense.  A couple of days after counsel provided it to us
25  and after it was made available to the defense, we were
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

6

8634PFAC

1   notified very promptly by UMDA that were privileged documents
2   that were inadvertently included on the disk.
3        I immediately sent letters to the three parties who I
4   understand received a copy of the disk and sought its immediate
5   return, explaining that it contains privileged material,
6   telling the counsel that I would see to it free of cost, that
7   they got a duplicate of a replacement disk, and I asked that it
8   be returned.  I have not heard anything back from counsel.
9        I think what most respectfully I am asking is the
10  court to inquire of Mr. Scheper whether he intends to return
11  these documents.  They do contain privileged information.  I am
12  not aware of the nature of the privilege; I am relying on the
13  representation of UMDA.
14        THE COURT:  There are two issues.  There is a whole
15  body of law.  Usually inadvertently transmitted documents do
16  come back and usually counsel agree to that.  Then there is a
17  separate question, even if you have to reach it, typically you
18  don't, often you don't.  But let's hear from counsel.
19        MR. SCHEPER:  Mr. Okula sent a letter out I think
20  Friday, the 30th, stating that I had refused, I think it points
21  to 13 sets of counsel, if anybody refused to destroy or return
22  the DVD, to let him know by 4:00 yesterday.  I was on a plane
23  at 4:00 yesterday, but I brought the DVD with me.
24        THE COURT:  Usually it's not a problem.  Are there
25  other people or that solves problem.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

18

8634PFAC

1          You should know incidentally, you probably get it by
2    now, maybe it's true of every judge, I really rely on meet and
3    confer. I often find counsel are really able to resolve a lot
4    of issues, motions, applications, contentiousness if they sit
5    down in good faith and do it. That also applies as we head
6    towards a trial of this case. I expect a lot of the attorneys
7    and for the most part I think that expectation has always been
8    met. I think that will happen here too.
9          Nice to see you all.
10                     -   -   -
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT 18

6707KLAM

1

```
     6707KLAM
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   KLAMATH STRATEGIC INVESTMENT
 3   FUND, et al.,
 4
 4              Movants,
 5
 5          v.                        M-85 (LAK)
 6
 6   UNITED STATES OF AMERICA,
 7
 7              Respondent.
 8
 8   ------------------------------x
 9
 9                              July 24, 2006
10                              3:00 p.m.
10
11   Before:
11
12              HON. LEWIS A. KAPLAN
12
13                              District Judge
13
14              APPEARANCES
14
15   LATHAM & WATKINS LLP
15        Attorneys for Movants
16   BY:  DAVID A. YORK
16        JOSEPH M. SALAMA
17
17   KIRKLAND & ELLIS LLP
18        Attorneys for Third-Party Movants David A. Makov,
18        John Larson and Presidio Advisory Services
19   BY:  JAY P. LEFKOWITZ
19        ANDREW M. GENSER
20
20   UNITED STATES DEPARTMENT OF JUSTICE
21   BY:  JENNIFER K. BROWN
21        Assistant United States Attorney
22
22   MICHAEL J. GARCIA
23        United States Attorney for the
23        Southern District of New York
24   BY:  DAVID S. JONES
24        Assistant United States Attorney
25
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

2

```
     6707KLAM
 1        (Case called)
 2        (In open court)
 3        MR. YORK:  We're ready.  I am David York, your Honor.
 4   I am accompanied by Joseph Salama.  I am not admitted to the
 5   Southern District and would like permission to argue today.
 6        THE COURT:  Yes.
 7        MR. YORK:  Thank you.
```
                              Page 1

6707KLAM

9  district judge has discretion to stay a civil deposition in the
10 circumstances before me, right?
11            MS. BROWN:  Well, I understand what you're saying,
12 your Honor, but I think that it's instructive.
13            THE COURT:  Well, it was a question.
14            MS. BROWN:  Your Honor, respectfully the government
15 thinks that it is controlling.
16            THE COURT:  Well, how is it controlling?  Did they
17 reverse a district judge for staying a deposition?
18            MS. BROWN:  No, your Honor, they did not.
19            THE COURT:  Did they say that a district judge
20 couldn't stay a civil deposition in these circumstances?
21            MS. BROWN:  No, your Honor, they did not.
22            THE COURT:  So I guess it's not controlling.
23            MS. BROWN:  No, but I think it's informative, and I
24 think it's important, your Honor, that the Second Circuit judge
25 cited to the United States Supreme Court case of Corbal.  And
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                              16

6707KLAM

1  in Corbal the United States Supreme Court has shown that the
2  proper kind of relief in a situation such as this is a stay to
3  the civil case.  And I think that's important here, because
4  what we have is a situation where the proper relief would be
5  for your Honor to deny the request to quash the subpoenas, for
6  the deponents to come in and either provide the testimony that
7  they can provide, or invoke their rights as they and their
8  lawyers decide is appropriate, and if in fact the United States
9  is then unable to get the appropriate facts to put in for its
10 case in Klamath, then the proper relief is for the Klamath case
11 in the Eastern District of Texas to be stayed.
12            And the Second Circuit cites to the Corbal case, and
13 so I think it's at least highly instructive that the
14 appropriate relief in a situation like this is not to quash the
15 subpoenas, it's not to close down discovery, but to allow the
16 discovery to move forward, and then the appropriate remedy is
17 going to be for the Texas case, the Texas court, to stay that
18 case if in fact the United States is unable to get its
19 discovery.
20            So I think that's the best remedy to the situation,
21 your Honor.  The United States needs to conduct its discovery
22 to put on a full and fair trial in the Klamath case which is
23 coming up on October 3.
24            THE COURT:  Look, I hear you say that, and I'm sure
25 it's sincere, but I'm guessing that I have been practicing law
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                              17

6707KLAM

1  or judging for probably something like 30 years longer than you
2  have, and you may be uncertain as to whether Mr. Makov or
3  Mr. Larson are going to take the Fifth Amendment if put to it,
4  but I'm not.  If they didn't, they would be crazy and their
5  lawyers would be guilty of malpractice.
6            So what is going on here -- putting aside issues of
7  subjective intention.  I ascribe no subjective bad intention to
8  anybody -- the reality of what is going on here is that
9  everybody -- and I mean everybody -- Makov, Presidio and the
10 government -- is gaming this for whatever they can get out of
11 it.
12            The government is gaming it because your -- I'm not
13 sure what you regard your best case as being, a stay in Texas
                          Page 8