UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>-against-<br><br>ROBERT PFAFF,<br><br>       Defendant. | CASE NO. 08 CR 239 RMB<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ROBERT PFAFF'S MOTION TO TRANSFER VENUE TO THE DISTRICT OF COLORADO<br><br>Hearing Date: September 23, 2008<br>Time:          10:00 a.m. |

**TABLE OF CONTENTS**

|     |     | Page |
| --- | --- | --- |
| I.  | INTRODUCTION | 1 |
| II. | THIS CASE SHOULD BE TRANSFERRED TO THE DISTRICT OF COLORADO | 2 |
|     | A. The Federal Rules Allow For The Transfer Of Cases For The Convenience Of The Defendant | 2 |
|     | B. Convenience And The Interests Of Justice Warrant Transfer To Colorado | 3 |
|     |    1. Mr. Pfaff Resides In Colorado And Requiring Him To Relocate To New York Would Be A Tremendous Burden | 3 |
|     |    2. The Charges Have A Minimal Connection To New York | 5 |
|     |    3. The Location Of Witnesses Favors Transfer To Colorado | 7 |
|     |    4. Docket Conditions Favor A Transfer to Colorado | 8 |
|     |    5. Denver Is At Least As Convenient As New York | 9 |
|     | C. The Inconvenience To The Government – If Any – Of Trying Its Case In Colorado Pales In Comparison To the Inconvenience to Mr. Pfaff Of Defending Himself In New York | 10 |
|     | D. Mr. Pfaff Is Under Separate Indictment In The Southern District Of New York In A Case Scheduled To Go To Trial Next Month | 10 |
| III. | CONCLUSION | 12 |

I.  **INTRODUCTION**

The indictment charges Robert Pfaff with a far-flung conspiracy based on his alleged design of a series of illegal "tax shelters"[1] dating back to the early 1990s in conjunction with a cast of co-conspirators located in the Saipan, Norway, the Philippines, Colorado, California and New York. Mr. Pfaff, the sole defendant, however, is neither a resident of New York (and never has been), nor is he alleged to have personally acted in New York in the course of this decade-long "conspiracy." Instead, most of the activity Mr. Pfaff is charged with occurred in his home district of Colorado. The primary link to New York is that it is the residence of one of Mr. Pfaff's alleged co-conspirators, Domenick DeGiorgio. But even Mr. DeGiorgio does not reside in this district – he lives in the Eastern District of New York. Moreover, Mr. DeGiorgio is a cooperating government witness who can presumably be directed by the government to appear wherever he needs to be. In short, the only persons in this case who appear to have a tie to the Southern District are the prosecutors.

If this case remains in New York, it will impose a tremendous burden on Mr. Pfaff. Each pretrial appearance will require Mr. Pfaff and his counsel to travel across the country. Once trial commences – which likely would occur later in New York than in Denver given their respective dockets – the defense will be forced to relocate to Manhattan for trial. This includes the costs of housing for Mr. Pfaff, his family and his defense team, as well as renting office space for the trial and other incidental expenses. As the Court must appreciate, New York is a pricey town.

In circumstances such as these, Federal Rule of Criminal Procedure 21(b) gives a court discretion to transfer a case to a more appropriate district for the convenience of the parties

---

[1] As set forth in Mr. Pfaff's motion for a bill of particulars, the government's allegations regarding these "shelters" is maddeningly vague, particularly given the years-long investigation of Mr. Pfaff's activities.

1

and in the interests of justice. A host of reasons favor moving this case to Colorado, including the convenience to Mr. Pfaff, his defense counsel and key witnesses. By contrast, there is no compelling reason to keep this case in the Southern District of New York.

## II.   THIS CASE SHOULD BE TRANSFERRED TO THE DISTRICT OF COLORADO

### A.   The Federal Rules Allow For The Transfer Of Cases For The Convenience Of The Defendant

Federal Rule of Civil Procedure 21(b) allows a court to transfer a case to another district "for the convenience of the parties and witnesses and in the interest of justice." To determine whether a transfer is warranted, the following factors are considered: (1) location of the defendants; (2) location of the possible witnesses; (3) location of the events likely to be at issue; (4) location of relevant documents and records; (5) potential for disruption of the defendants' businesses if transfer is denied; (6) expenses to be incurred by the parties if transfer is denied; (7) location of defense counsel; (8) relative accessibility of the place of trial; (9) docket conditions in the potential district; and (10) any other special circumstances that might bear on the desirability of transfer. Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243-44 (1964); United States v. Maldonado-Rivera, 922 F.2d 936, 966 (2d Cir. 1990). "No one of these factors is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance." Maldonado-Rivera, 922 F.2d at 966; see also United States v. Martino, 2000 U.S. Dist. LEXIS 17945, at *17 (S.D.N.Y. Dec. 14, 2000).[2]

In striking this balance, district courts have focused on some factors more than others. In particular, they have repeatedly emphasized the importance of trying defendants in their home district. See United States v. Russell, 582 F. Supp. 660, 662 (S.D.N.Y. 1984); United States

---

[2] Because venue disputes "raise deep issues of public policy," United States v. Johnson, 323 U.S. 273, 276 (1944), the overall determination of whether or not to grant a transfer should be guided by general notions of fairness and justice. See United States v. Aronoff, 463 F. Supp. 454, 457 (S.D.N.Y. 1978).

2

v. Hanley, 1996 U.S. Dist. LEXIS 1692, at *6 (S.D.N.Y. Feb. 10, 1995); United States v. Cashin, 281 F.2d 669, 675 (2d Cir. 1960) (citing United States v. Johnson, 323 U.S. 273, 275 (1944)). For this reason, courts "have afforded greater weight to the defendant's interest in being tried in the district of his residence *than to any other factor*." Martino, 2000 U.S. Dist. LEXIS 17945, at *5.

Moreover, in tax cases, Congress has been especially mindful of the hardships to defendants of defending themselves far from home. Title 18 U.S.C. § 3237(b) grants defendants charged with tax violations the right to be tried in their home district where venue is based solely on a mailing to the IRS. Although that provision is not at issue here, it indicates a general desire on the part of Congress to try defendants in tax cases where they live. See Martino, 2000 U.S. Dist. LEXIS 17945, at *19-20, n.7 (quoting the Senate Judiciary Committee Report that "too frequently prosecutions are not brought in the defendants' home districts but rather in the district most convenient to the director of internal revenue" and noting the "substantial" cost and inconvenience to defendants, their counsel and witnesses of trying cases far from home.)[3] Here, the only two acts Mr. Pfaff allegedly directed at New York were of the same ilk as a mailing to the IRS. First, he is alleged to have sent a letter *from* Colorado to Mr. DeGiorgio in New York (the indictment does not specify in which District in New York). Second, he is alleged to have sent a fax *from* Colorado to the Philippines with a *copy* to Mr. DeGiorgio in New York. Ind. ¶¶ 33. (a), (ee). That is it.

B.  **Convenience And The Interests Of Justice Warrant Transfer To Colorado**

1.  **Mr. Pfaff Resides In Colorado And Requiring Him To Relocate To New York Would Be A Tremendous Burden**

As the government alleges, at "all times relevant to this indictment," Mr. Pfaff has been "a resident of Colorado." Ind. ¶ 1. He has never lived in the Southern District of New York.

---

[3]  Although not charged with tax evasion, several of the "overt acts" listed in the indictment against Mr. Pfaff are the filing of his tax returns with the IRS, which he did from Colorado. See Ind. at ¶¶ 33 (z), (gg), (nn), (qq), (yy), (ddd), and (hhh).

3

As a long-time resident of Colorado, Mr. Pfaff has a strong interest in defending himself there. Courts have recognized the strong policy interest in transferring cases to a defendant's home district, especially where venue is predicated on the use of mail or wires. See Martino, 2000 U.S. Dist. LEXIS 17945, at *6 (transferring to the defendant's home venue in the Southern District of Florida); Russell, 582 F. Supp. at 662 (transferring to the defendant's home venue in the Western District of Tennessee). United States v. Ohran, 2000 U.S. Dist. LEXIS 6480, at *3 (S.D.N.Y. May 12, 2000) (transferring to the defendant's home venue in the Middle District of Florida); Hanley, 1996 U.S. Dist. LEXIS 1692, at *2 (transferring to the defendant's home venue in the Central District of California). Due to the obvious hardships of standing trial away from home, "wherever possible, defendants should be tried where they reside." Russell, 582 F. Supp. at 662.

Trying this case in New York will impose a substantial financial burden on Mr. Pfaff. First, his business interests are on the West Coast and he will have to spend significant amounts of time traveling to and from New York, which is a distraction that is wholly unnecessary when he could appear quite easily in Denver. He will also be forced to incur travel, lodging, and food expenses for himself, his family and his Los Angeles-based counsel while this case is litigated. See United States v. Templin, 251 F. Supp. 2d 1223 (S.D.N.Y. March 13, 2003) (noting the great expense of traveling to New York and residing there during trial). Already, Mr. Pfaff has attempted to waive certain pretrial appearances due to the cost and distance of traveling to New York. See May 28, 2008 Letter (Doc. 4); Hanley, 1996 U.S. Dist. LEXIS 1692, at *12 (crediting the fact that the defendant was compelled to waive pretrial appearances based in the costs of travel).

Exacerbating these costs is the fact that Mr. Pfaff is already scheduled to stand trial here starting next month before Judge Kaplan in the matter United States v. Stein, et al., 05 Cr. 888 (LAK). That case has been pending since August 2005 and the present estimate is that trial will last

four months. Therefore, if this case is not transferred to Colorado, Mr. Pfaff will have to bear the costs of *successive* trials in New York.

In short, the unnecessary expense of having this case proceed in New York is enormous. Colorado will be much more convenient – and less economically devastating – for Mr. Pfaff, which will allow him to focus his time and resources preparing his defense. Accordingly, in the interests of justice, the Court should transfer this case.

2.  **The Charges Have A Minimal Connection To New York**

In addition to the considerable burden to Mr. Pfaff of defending this matter in New York, the government's allegations show only incidental connections between Mr. Pfaff and the Southern District. Indeed, there is no mention in the indictment that Mr. Pfaff personally executed any portion of the alleged conspiracy from New York. Rather, the allegations regarding Mr. Pfaff focus primarily on his conduct in Colorado. In the section describing overt acts, the references to New York describe either: (1) the conduct of other individuals (Ind. ¶ 33(b), (e), (m), (ee)); (2) financial transactions taking place between New York and the Philippines (Ind. ¶ 33 (r), (cc)); or (3) communications (most of which do not involve Mr. Pfaff) with Mr. DeGiorgio in New York. (Ind. ¶ 33(a), (ee), (tt), (ww), (xx).) Indeed, the only overt acts Mr. Pfaff is alleged to have himself taken that were directed at New York were sending a letter and a fax to Mr. DeGiorgio *from Colorado*, and these communications copied others in Colorado, Saipan and the Philippines. Ind. ¶¶ 33 (a), (ee). Such incidental connections do not favor keeping the case in the jurisdiction it was originally filed. United States v. Menashe, 1990 U.S. Dist. LEXIS 10645, at *6-7 (S.D.N.Y. August 16, 1990).

By contrast, and as one would expect, there is much more activity that is alleged to have occurred in Colorado (and elsewhere outside New York). The government's main allegations in the indictment reveal the following connections to Colorado:

5

- At all times relevant to the indictment, Mr. Pfaff was a resident of Colorado. (Ind. ¶ 1.)

- Mr. Pfaff worked in Colorado. (Ind. ¶ 33 (bb).)

- Mr. Pfaff's tax preparer was based in Colorado. (Ind. ¶ 29.)

- Mr. Pfaff's alleged "fee income" was routed to an attorney in Colorado. (Ind. ¶ 19 (f).)

- Mr. Pfaff's alleged communications to advance the "conspiracy" originated from Colorado. (Ind. ¶¶ 33 (a), (g), (n), (ii), (ll), (rr).)

- The proceeds stemming from the alleged conspiracy were sent to Colorado. (Ind. ¶¶ 33 (p) (to a "real estate concern" in Colorado), (q) (contribution to his children's trusts), (s) (tuition for his son's school and real estate in Breckenridge, CO), (w) (Breckenridge home, car and interests in mutual funds), (cc) ("fee income" routed through Colorado bank account), (ii) (payments to Pfaff's dentist and for real estate in Englewood, CO), (ll) (checks for country club, a Denver music store, and home renovations), (oo) (a car for his sister from Littleton, CO dealership).)

- Mr. Pfaff's tax returns were prepared and filed from Colorado. (Ind. ¶¶ 33 (z), (gg), (nn), (qq), (yy), (ddd), and (hhh).)

- The IRS interview in which Mr. Pfaff allegedly falsely and misleadingly testified occurred in Denver. (Ind. ¶¶ 31, 33 (eee).)

In sum, the core allegations against Mr. Pfaff focus on activities which he allegedly undertook in Colorado. In <u>United States v. Alter</u>, the district court granted a transfer from New York to Florida largely based on the fact that a boiler room in Miami served as the "nerve center" of the alleged criminal activity. 81 F.R.D. 524, 526 (S.D.N.Y. 1979). Though the defendant in that case also housed various files and records in an office in New York, the court emphasized that Miami was the primary location of the alleged acts, and granted a transfer on that basis. <u>Id.</u> at 526. Likewise, in <u>Martino</u>, the district court recognized the fact that the tax evasion scheme at issue was executed in another district. 2000 U.S. Dist. LEXIS 17945, at *22.

The other locations Mr. Pfaff is alleged to have touched in this "conspiracy" include Saipan (Ind. ¶ 15), Arizona (*id.*, ¶ 33 (f), (i)) and San Francisco (*id.*, ¶ 33 (m)). The connections to

6

even these fora are more robust than to the Southern District of New York, and all three, obviously, are closer to Colorado.

        3.      **The Location Of Witnesses Favors Transfer To Colorado**

Given such a tenuous connection between the charges and New York, it is not surprising that most of the presumed witnesses are also from places outside New York. Indeed, of all the individuals identified in the indictment, only Mr. DeGiorgio resides there, albeit in the Eastern District.[4] Trying this case in Colorado will be equally as, if not more, convenient to the majority of the witnesses who will presumably appear at trial. Below is a list of the individuals mentioned in the indictment and where, to the best of the defense's knowledge, they are located:

- Stuart Moisen (Ind. ¶ 4): **Colorado, California and Saipan.**[5]

- Saipan Co-Conspirator-1 (Ind. ¶ 6): **Saipan.**[6]

- Domenick DeGiorgio (Ind. ¶ 7): **New York.**

- Two individuals from Saipan (Ind. ¶ 8): **Saipan.**

- Philippines Co-Conspirator (Ind. ¶ 9): **Philippines.**[7]

- Norwegian Co-Conspirator (Ind. ¶ 10): **Norway.**

- Attorney in Denver. (Ind. ¶ 19(f), 33(q)): **Colorado.**

- Saipan Company secretary (Ind. ¶¶ 23, 26): **Saipan.**

---

[4]     Last month, Mr. Pfaff had Mr. DeGiorgio served in the related civil action involving UMDA, the "Saipan Company" named in the indictment, at his home in Cold Spring Harbor, New York, which is located in the Eastern District of New York. Scheper Decl., ¶ 3 and Exh. B.

[5]     Mr. Moisen is a cooperating government witness, so presumably would appear wherever the government instructed.

[6]     On information and belief, this is Michael Grandinetti, who is also a cooperating government witness.

[7]     On information and belief, this is Jaime Romero-Salas, who is also a cooperating government witness.

- Mr. Pfaff's brother in law (Ind. ¶¶ 25, 28): **Florida**.

- Colorado-based tax preparer. (Ind. ¶¶ 29, 32): **Colorado.**

- IRS Revenue Agent who interviewed Mr. Pfaff in June 2003 (Ind. ¶¶ 30, 31): **Oregon**. The other government agents present were from **California**.[8]

- Fact witnesses who would support the government's allegations regarding expenditures Mr. Pfaff allegedly had made for real estate, cars, home renovations, etc. in Colorado (Ind. ¶ 17): **Colorado.**

Most of these witnesses are either from Colorado, or would find Colorado a more convenient venue than New York. See United States v. Layne, 2005 U.S. Dist. LEXIS 7567, at *8 (S.D.N.Y. 2005) (noting that most of the fact witnesses would be tied to the "nerve center" of the alleged fraud).[9] Although there is no single venue that is home to all of the witnesses, Colorado is far preferable to New York for the majority of the likely witnesses.

4.  **Docket Conditions Favor A Transfer to Colorado**

Next, a comparison of the docket conditions in the two jurisdictions favors transferring this case to the District of Colorado. The Judicial Caseload Profile, which is published by the Administrative Office of the United States Courts, reveals the median time from indictment to disposition for criminal cases in the Southern District of New York was 18.5 months; but in the

---

[8] There were three IRS employees at Mr. Pfaff's IRS interview, which took place in Denver, Colorado on June 12 and 13, 2003. These included attorney Robert Cudlip (San Diego, California), IRS Agent George Terpak (Coos Bay, Oregon) and IRS Agent Victoria Rex (San Francisco, California). Scheper Decl., ¶ 4, Exh. C (first page of interview transcripts).

[9] Moreover, should Mr. Pfaff call any character witnesses, they would likely be from his hometown community in Colorado and would have to suffer the inconvenience of traveling across the country to New York. The availability of these witnesses is essential because a defendant's character is often a contested issue in prosecutions for fraud. See Menashe, 1990 U.S. Dist. LEXIS 10645, at *4 (stating that a defendant's character can be probative of mens rea); Aronoff, 463 F. Supp. at 458 (considering the location of character witnesses to be a "significant" factor in weighing a transfer); Russell, 582 F. Supp. at 663 (crediting the fact that the defendant would be calling character witnesses located in Memphis). Also, character witnesses tend to have more credibility when testifying in the district where they live and work. See Martino, 2000 U.S. Dist. LEXIS 17945, at *5; Ohran, 2000 U.S. Dist. LEXIS 6480, at *9.

8

District of Colorado, the median time from indictment to disposition was only 8.7 months. See Judicial Caseload Profile at www.uscourts.gov/cgi-bin/cmsd2007.pl and www.uscourts.gov/cgi-bin/cmsd2007.pl. This disparity is to be expected based on recent statistics showing that there were 885 total cases pending per judge in the Southern District of New York, but only 376 cases pending per judge in the District of Colorado. Although the courts have placed less emphasis on this factor in relation to others, see United States v. Valdes, 2006 U.S. Dist. LEXIS 12432, at *18 (S.D.N.Y. March 17, 2006), we offer these statistics simply to suggest that a transfer to the District of Colorado will not worsen docket congestion in the federal courts.

As for Mr. Pfaff, his present focus is on his upcoming trial in Stein. Once that case is resolved in the coming months, he will return home and prepare his defense in this case. Given the years he has suffered under government investigation, the prospect of a more timely resolution in his home jurisdiction of this second indictment also favors a transfer to the District of Colorado.

     5.    **Denver Is At Least As Convenient As New York**

Court have placed less importance on the physical location of records, and accessibility of the place of trial than the other factors. See, e.g., Martino, 2000 U.S. Dist. LEXIS 17945, at * 5 (Dec. 13, 2000) (recognizing the relative ease in the transportation of documents); United States v. Layne, 2005 U.S. Dist. LEXIS 7567, at *11 (S.D.N.Y. 2005); Menashe, 1990 U.S. Dist. LEXIS 10645, at *6 (S.D.N.Y. Aug. 16, 1990).

Here, however, both considerations make Denver at least as convenient as New York. With respect to documents, to date the government has either produced hard copies or DVDs of relevant documents. While the defense anticipates that there may be more discovery from the

government to come, it is not expected to be of a volume or in a format that requires the defense to physically review documents in New York.[10]

With respect to the accessibility of the courts, Denver is a major airline hub and is physically closer to Saipan, the Philippines, California and Oregon than is New York. Most trial witnesses will therefore find Denver more convenient that New York. Similarly, it should pose no difficulty to the prosecution to get to Denver for pretrial matters.

    C.    **The Inconvenience To The Government – If Any – Of Trying Its Case In Colorado Pales In Comparison To the Inconvenience to Mr. Pfaff Of Defending Himself In New York**

The inconvenience to the government of trying a case in another forum is given little weight when other considerations of convenience suggest transfer is appropriate. See United States v. Gruberg, 493 F. Supp. 234, 243 (S.D.N.Y. 1979). Courts consider the government to be in a better position to bear the expense. See Martino, 2000 U.S. Dist. LEXIS 17945, at * 24; Ohran, 2000 U.S. Dist. LEXIS 6480, at *4. Here, any inconvenience to the government is of its own making as it chose to indict this case in the Southern District of New York rather than in the more obvious District of Colorado. Moreover, given its years-long investigation in places as far-afield as Micronesia and Scandinavia, the government should not be heard to complain of the expense of sending its prosecution team to another state for a limited period of time.

    D.    **Mr. Pfaff Is Under Separate Indictment In The Southern District Of New York In A Case Scheduled To Go To Trial Next Month**

As this Court is aware, Mr. Pfaff will be starting trial next month before Judge Kaplan in Stein. This presents a somewhat unique set of circumstances which also favors transfer.

---

[10] As we have explained to the Court before, UMDA has been resisting producing discovery in the parallel civil action, so it is unknown what other discovery may exist. UMDA's Memorandum of Law (Dkt. #14) at 3-6.

In the pre-trial motions phase in <u>Stein</u>, Mr. Pfaff moved to dismiss the indictment for lack of venue.[11] The Court was reluctant to allow for changes of venue in <u>Stein</u> case due to circumstances not relevant in this action. First, many of the underlying acts in <u>Stein</u> occurred in New York, "including meetings and conference calls about the tax shelters, sales pitches to tax shelter clients, and the drafting of allegedly fraudulent opinion letters." 429 F. Supp. 2d 633, 646 (S.D.N.Y. 2006). Second, the government produced millions of pages of discovery that were permanently housed in New York. <u>Id.</u> Third, that case involved eighteen defendants.[12] Therefore, transferring the matter to the home districts of each moving defendant would have required the court to sever many of the defendants, creating a risk of inconsistent results from separate trials. <u>Id.</u> This action, on the other hand, involves a single defendant, a limited number of documents, and almost no connection to New York.

Since 2005, when he was indicted in <u>Stein</u>, Mr. Pfaff has had to bear the tremendous burden and expense of defending himself in a District far from his home and is poised to expend yet more of his resources in the coming months of trial. Having been forced to incur the extraordinary expenses of an out-of-town defense in the <u>Stein</u> matter for years, fundamental fairness requires that Mr. Pfaff be permitted to defend himself in this new indictment from his home district without having to bear the heavy – and, in this indictment, unwarranted – burden of again having to defend himself in New York.

---

[11] Here, Mr. Pfaff is not moving to dismiss for lack of venue (a Constitutional challenge), but rather, is seeking to transfer for convenience to his home district pursuant to Federal Rule of Criminal Procedure 21(b).

[12] Thirteen of these eighteen defendants were dismissed in mid-2007 for prosecutorial misconduct. The dismissal was appealed by the government to the Second Circuit and the parties are awaiting a decision.

III.     **CONCLUSION**

For the reasons set forth above, Mr. Pfaff respectfully requests that the Court transfer this case to the District of Colorado pursuant to Federal Rule of Criminal Procedure 21(b).

Dated:  August 18, 2008

Respectfully submitted,

OVERLAND BORENSTEIN SCHEPER
& KIM LLP

By:_____/s_____
David C. Scheper (DCS 0072)
One Bunker Hill
601 W. Fifth Street, 12th Floor
Los Angeles, CA  90071
(213) 613-4655

Attorneys for Defendant Robert Pfaff