EXHIBIT A

```
 1                  UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2

 3    UNITED STATES OF AMERICA,        .
                                       .
 4              Plaintiff,             .
                                       .  CR No. 08-231
 5        v.                           .
                                       .
 6    THEODORE F. STEVENS,             .  Washington, D.C.
                                       .  Wednesday, August 20, 2008
 7              Defendant.             .  11:17 a.m.
                                       .
 8    . . . . . . . . . . . . . .      .

 9              TRANSCRIPT OF MOTION FOR CHANGE OF VENUE
10              BEFORE THE HONORABLE EMMET G. SULLIVAN
                       UNITED STATES DISTRICT JUDGE
11
      APPEARANCES:
12
      For the Government:         BRENDA MORRIS, ESQ.
13                                EDWARD SULLIVAN, ESQ.
                                  NICHOLAS MARSH, ESQ.
14                                United States Department of Justice
                                  1400 New York Avenue, N.W.
15                                12th Floor
                                  Washington, D.C.  20005
16                                202-514-1412

17    For the Defendant:          BRENDAN V. SULLIVAN, ESQ.
                                  ROBERT CARY, ESQ.
18                                ALEX ROMAIN, ESQ.
                                  Williams & Connolly, LLP
19                                725 Twelfth Street, N.W.
                                  Washington, D.C.  20005
20                                202-434-5000

21    Court Reporter:             JACQUELINE M. SULLIVAN, RPR
                                  Official Court Reporter
22                                U.S. Courthouse, Room 6720
                                  333 Constitution Avenue, N.W.
23                                Washington, D.C. 20001
                                  202-354-3187
24
      Proceedings reported by machine shorthand, transcript produced
25    by computer-aided transcription.


                          Jacqueline Sullivan, RPR
                          Official Court Reporter
```

PROCEEDINGS

1
2    COURTROOM DEPUTY: 08-231, United States versus
3 Theodore Stevens.
4    Will counsel please identify yourselves for the
5 record?
6    MS. MORRIS: Good morning, Judge. Brenda Morris, Nick
7 Marsh, and Ed Sullivan for the government.
8    THE COURT: Good morning, counsel.
9    MR. B. SULLIVAN: Good morning, your Honor. Brendan
10 Sullivan, Rob Cary, Alex Romain for Senator Stevens.
11    THE COURT: Good morning, counsel. It's your motion.
12    MR. B. SULLIVAN: Thank you.
13    I think that in the history of the Republic it's
14 probably safe to say that there have never been more than forty
15 witnesses that will travel round trip seven thousand miles to
16 get to a trial.
17    THE COURT: Well, some may not have to travel. We
18 have video-conferencing capability. State-of-the-art. It's HD
19 quality.
20    MR. B. SULLIVAN: My dearly beloved senior partner, Ed
21 Bennett Williams, died twenty years ago today. I don't think
22 he'd ever advise me to permit a video if we can get the real
23 live witness right here that close to a jury. In the forty
24 years I've been doing this, I think there may be sometimes it's
25 necessary, you just don't get the witness otherwise, and that

Jacqueline Sullivan, RPR
Official Court Reporter

3

1  technology has to be used, and I think it can be used
2  effectively, but not as effectively, especially in the area of
3  cross-examination, your Honor. I think it's crucial to have the
4  witnesses here.
5       THE COURT: But you raise another point, though. The
6  government hasn't said that it would have problems producing its
7  witnesses, so your right to cross-examining is not adversely
8  impacted at all. You will have the right within reason to
9  vigorously cross-examine the government witnesses, and they
10 haven't indicated to the Court there's any hardship whatsoever,
11 and indeed the Court would not be sympathetic to the
12 government's request to allow its witnesses to participate by
13 way of video-conferencing because that would probably intrude on
14 your client's confrontational rights, so I wouldn't allow that.
15      MR. B. SULLIVAN: Right.
16      THE COURT: You're going to have the right to cross-
17 examine to your heart's content if the case stays here or
18 wherever the case is tried.
19      MR. B. SULLIVAN: I certainly wouldn't expect the
20 government to claim hardship for its witnesses. I guess it may
21 not be true, but from where we sit, it looks like the government
22 has a lot of assets, and transporting witnesses in order to have
23 a case in the District of Columbia I'm sure is not of any
24 concern to our United States government. The government --
25      THE COURT: It's a concern to the Court, though.

Jacqueline Sullivan, RPR
Official Court Reporter

4

1       MR. B. SULLIVAN: Yes, your Honor.
2       THE COURT: And the Court seriously considers your

1     brief response to the question of timing?

2           THE COURT: Sure, sure.

3           MR. MARSH: Your Honor, I just wanted to respond very

4     briefly to the question of the timing. As Mr. Sullivan

5     indicated, there were a number of tolling agreements entered

6     into in this case. I don't believe it's relevant to go into a

7     significant amount of detail about the circumstances, but I

8     would like to represent from the government's view that there

9     were a number of reasons why those agreements were entered into.

10    There were a number of factors relating to them and we do not

11    believe that the defendant was unaware about the timing issues

12    the government faced with respect to this indictment.

13           THE COURT: It's your motion, counsel. You have the

14    right to have the next to last word, anyway.

15           MR. B. SULLIVAN: Your Honor, I have no reason in the

16    world to understand why this case wouldn't have been brought

17    after an election. None.

18           THE COURT: All right. I'm prepared to rule today on

19    this. I want to take about a five-minute recess and I'll

20    announce my ruling when I return. Thank you. No need to stand.

21           COURTROOM DEPUTY: This Honorable Court now stands in

22    a brief recess.

23           (Recess taken at about 12:13 p.m.)

24           COURTROOM DEPUTY: Please remain seated and come to

25    order.

Jacqueline Sullivan, RPR
Official Court Reporter

45

1   (Back on the record at about 12:19 p.m.)

2   THE COURT: All right, counsel. Federal Rule of
3   Criminal Procedure 21(b) provides, and I quote, that "upon the
4   defendant's motion, the Court may transfer the proceeding, or
5   one or more counts, against that defendant to another district
6   for the convenience of the parties and witnesses and in the
7   interest of justice." End quote. The defendant bears the
8   burden of establishing that the case, and I quote, "would be
9   better off", end quote, transferred to another district. In
10  that regard, see United States versus Quinn, 401 Fed Supp. 2d,
11  80, 85, an opinion by my colleague, Judge Bates. In determining
12  whether a case should be transferred under Federal Rule of
13  Criminal Procedure 21(b), the Court must consider ten factors:
14  location of the defendant, location of possible witnesses, the
15  location of events likely to be an issue, location of documents
16  and records likely to be involved, the disruption of defendant's
17  business unless the case is transferred, expense to the parties,
18  the location of counsel, relative accessibility of the place of
19  trial, the docket condition in each district or division
20  involved, any other special elements that might affect transfer.
21  And those factors were particularly articulated by the Supreme
22  Court in the case of Platt versus Minnesota Mining and
23  Manufacturing Company.

24  Upon consideration of those factors and written and
25  oral arguments advanced by the parties, the Court denies

Jacqueline Sullivan, RPR
Official Court Reporter

1   defendant's motion to transfer this proceeding to the District
2   of Alaska for the following reasons:

8-20-08-03.txt

3       In United States versus Quinn my colleague, Judge
4   Bates, considered and denied an analogous motion to transfer a
5   case to the Eastern District of Kentucky. In his opinion
6   denying the motion the Court stated that while the, quote,
7   "fact- intensive and discretionary nature of the Platt inquiry
8   makes it difficult to generalize about how courts decide which
9   of two districts is more appropriate, some patterns are
10  discernible. End quote. For example, he noted a presumption
11  favoring the government's choice of forum, as long as venue is
12  proper, and that, and I quote, "if consideration of the Platt
13  factors leaves the Court in equipoise, the Court should err on
14  the side of caution and deny the motion. End quote. Judge
15  Bates concluded, and I quote, "The Court's own research supports
16  the observation to transfer under Rule 21(b) although not
17  unheard of, has been rare in recent years. This is hardly
18  surprising when one considers the massive expansion of
19  technology and the relative decline in costs for long-distance
20  travel over the past few decades. End quote.
21      This Court is persuaded by the rationale of Judge
22  Bates' ruling. The Court will summarize the parties' respective
23  arguments as to each factor, or note where the parties agree
24  that the factor is neutral, and give my recommendation.
25      With respect to the location of the defendant, the

Jacqueline Sullivan, RPR
Official Court Reporter

1   defense argues that this factor weighs heavily in favor of
2   transfer and cites cases for the proposition that it is, quote,
3   "preferable to try a defendant in the district where he resides.

End quote.

5  The defendant also points out that Senator Stevens'
6  residence in Alaska and the value of renovations to that
7  residence is the focus of that indictment and the case and to,
8  quote, "assist the jury in understanding that these renovations,
9  Senator Stevens intends to request that the Court permit a jury
10 visit to his Girdwood residence. End quote.

11 The government counters that the senator works in the
12 District of Columbia. The government has represented Alaska
13 since 1968; he owns a home in D.C. and his wife is a partner in
14 a law firm in D.C. The government notes that if the trial is
15 here, the Senator will be able to maintain close contact with
16 his Senate office and live in his own home. In addition to the
17 Quinn case, the government cites Jones versus Gasch, G-a-s-c-h,
18 404 Fed 2d 1231, another opinion from the District of Columbia
19 Circuit affirming a denial of a motion to transfer and noting
20 that the district court found that residence was, quote, "a
21 factor to be considered," end quote, but, quote again, "not the
22 controlling factor." End quote.

23 The Court is of the opinion this factor weighs in
24 favor of the government. Unlike cases where the defendant would
25 be tried away from home in an unfamiliar city, Senator Stevens

Jacqueline Sullivan, RPR
Official Court Reporter

48

1  lives in Washington, D.C. for at least a substantial part of the
2  year. So far in 2008, the Senate has been in session for a
3  total of 96 out of 232 calendar days, about 41 percent.
4  The second factor, location of possible witnesses,
5  defendant argues that this is one of the most significant

6  factors in the analysis and that it weighs heavily in favor of
7  transfer. Defense notes that the government intends to call
8  more witnesses from Alaska than any other jurisdiction and
9  contends that all the government's key witnesses are from Alaska
10 and that more than ninety percent of the witnesses Senator
11 Stevens intends to call are residents of Alaska.
12       The government again cites to Quinn, where Judge Bates
13 found that although more witnesses resided in Kentucky than in
14 Washington, D.C., there were also a number of witnesses who
15 resided in other jurisdictions and would have to travel in any
16 event. The government also cites to United States versus Spy
17 Factory, 951 Fed Supp. 450, a case decided by the Southern
18 District of New York, holding that, and I quote, "a naked
19 allegation that witnesses will be inconvenienced by trial in a
20 distant forum will not suffice for transfer", end quote, and
21 defendant, quote, "must offer specific examples of witnesses'
22 testimony and their inability to testify because of the location
23 of the trial." End quote. Here, the government argues,
24 defendant has not even made a threshold showing that witnesses
25 will be unable to testify here.

                    Jacqueline Sullivan, RPR
                    Official Court Reporter

49

1       The Court's persuaded by that argument. This factor
2  does not weigh in favor of transfer. There's been no showing
3  that Senator Stevens will be unable to call his witnesses if the
4  trial is here. Moreover, it appears that D.C. is far more
5  accessible than Anchorage, Alaska for the witnesses who would
6  have to travel to either forum.

7       Further, this courthouse is equipped with
8  video-conferencing capability to ameliorate any travel hardship
9  to any witness.
10       The third factor, the location of events likely to be
11 an issue, the defendant argues that all of the alleged
12 underlying conduct took place in Alaska, this is a significant
13 factor in the analysis, and that it weighs in favor of transfer.
14       The government counters that this is a case about a
15 scheme to conceal, through the submission of false financial
16 disclosure forms to the United States Senate and that the
17 financial disclosure forms were created, reviewed, signed,
18 submitted, and filed in the District of Columbia.  In addition,
19 the government notes that some of the alleged conduct occurred
20 in Washington, D.C.  Finally, citing Quinn, the government notes
21 that this factor is more focused, quote, "to contemplate a case
22 where jurors might benefit from a visit to a crime scene or
23 might require some understanding of local geography."  End
24 quote.  The government notes that the Girdwood residence is not
25 a crime scene, that there are more than 1,000 high-resolution

Jacqueline Sullivan, RPR
Official Court Reporter

50

1  digital photos of the residence which could suffice if any of
2  the physical features of the home are relevant in trial.
3       The Court does not draw this factor as one it favors.
4  The financial disclosure forms are required by the United States
5  Senate and are filed here, and thus any falsification of the
6  forms was committed here.  Moreover, there should be no need for
7  a visit to the Senator's Alaska residence to view the
8  renovations.  Any view can be accomplished by viewing

8-20-08-03.txt

```
 9   photographs or films of the residence.
10            The fourth factor, location of documents and records
11   likely to be involved, the parties basically agree this a
12   neutral factor.
13            The fifth factor, disruption of the defendant's
14   business unless the case is transferred, the defendant relies
15   most heavily on this factor, arguing that the trial here will
16   prevent him from campaigning in Alaska in the weeks immediately
17   prior to the election.
18            The government responds that Senator Stevens requested
19   the transfer motion.  Moreover, the government offers persuasive
20   argument that the Senator's campaign status is a substantial
21   reason against transfer and that his intention to campaign
22   during the trial could lead to significant potential for jury
23   tainting and media exposure.
24            The government's argument is persuasive and this
25   factor can be further neutralized if the Court determines, as it
```

Jacqueline Sullivan, RPR
Official Court Reporter

51

```
 1   has, that it will not hold trial on Fridays.  That's a decision
 2   that the Court will give further consideration to after
 3   obtaining additional input from both sides.  By not sitting on
 4   Fridays this will allow Senator Stevens to travel to Alaska and
 5   campaign on weekends, arguably more time than he would have if
 6   the trial were held five days a week in Alaska.  This would also
 7   reduce the risk of jury exposure to the media.  Further, this is
 8   a travel schedule that will not be unfamiliar to the defendant.
 9   It is fairly common knowledge that many or all senators and
```

10  presumably Senator Stevens regularly return to their home states
11  for the weekends. By the way, the Senate often is not in
12  session on Mondays and Fridays. So far in 2008 there have been
13  only five weeks where the Senate was in session for all five
14  days.
15       The sixth factor, the expense to the parties, the
16  experts essentially agree this factor is neutral in the papers
17  filed, although the Court has heard some unsubstantiated
18  evidence today with regards to expense, but the Court doesn't
19  factor the expense issue into the decision-making process at
20  this time because, other than a vague argument about expenses,
21  there's been no evidence to persuade the Court that the expense
22  to the parties is a significant factor in this case.
23       The location of counsel, defendant -- strike that.
24  Defense argues this factor is likely neutral. Government argues
25  that if anything, it tips against transfer. In the Court's view

Jacqueline Sullivan, RPR
Official Court Reporter

1   the factor does not favor transfer. The investigation was done
2   principally here in the District of Columbia and Alaska as well
3   to a certain extent. The lead prosecutors are here and the
4   defendant's defense counsel's firms has offices here.
5        Relative assessibilty to place of trial. The parties
6   agree this factor is essentially neutral.
7        The docket, the ninth factor, docket condition of each
8   district or division involved. Defense argues that this factor
9   is neutral because the Court has agreed to an early trial date
10  and they ask that the Court preside over the trial in Alaska,
11  and indeed the Court's flattered.

12     The government argues that this factor weighs against
13  transfer because transfer would likely require this Court or
14  another district judge to travel to Alaska to preside over the
15  trial. Arguably there could be issues of judicial recusal by
16  active judges in the U.S. District Court for Alaska. Moreover,
17  in a footnote the government references this Court's recent
18  experiences with high profile cases and the procedures in place
19  to deal with significant media attention and note that the court
20  in Alaska may not be similarly equipped.
21     This factor in the Court's view weighs against
22  transfer. Moreover, although the government concedes the
23  recusal issue is speculative, it is not entirely far-fetched.
24  Having this Court move to Alaska would almost certainly cause
25  delay. This Court went to great lengths, emphasis added, great

Jacqueline Sullivan, RPR
Official Court Reporter

53

1   lengths, to rearrange its calendar to give the defendant an
2   early trial date here in the District of Columbia and the
3   defendant assumes that the Court will be able to stick to the
4   same trial date even if the trial were moved to Alaska. The
5   disruption to the Court's calendar and cases it presides over
6   would be significantly adversely impacted. It's doubtful that
7   the Court would be able to conduct its normal Friday business
8   while on detail in business.
9      And finally, as we know, the Court in Alaska is
10  unequipped to handle the media and other logistical issues
11  associated with this case.
12     Any other special elements that might effect transfer:

13　The defendant doesn't really articulate any others.

14　　　　　The government argues, and the Court is persuaded,
15　that because the defendant is up for reelection in Alaska and
16　will be campaigning, that's actually a reason not to transfer
17　the trial to Alaska.

18　　　　　The Court's persuaded by that argument as well.
19　Senator Stevens has asked for an early trial date and the Court
20　gave him the date he asked for. The wrongdoing alleged in the
21　indictment occurred here. The factors weighing most heavily in
22　favor of transfer (location of possible witnesses and disruption
23　to defendant's business) do not outweigh the factors against
24　transfer (docket conditions, etcetera,) especially where the
25　Court will not hold trial on Fridays. Any transfer would almost

Jacqueline Sullivan, RPR
Official Court Reporter

1　certainly lead to delay and additional expense.

2　　　　　And that's the Court's ruling. The motion to transfer
3　then is denied.

4　　　　　Having addressed the only issue before the Court, I
5　want to briefly talk about a related issue because now it is
6　truly related, and that's the question of voir dire. The
7　parties have complied with the Court's order and have submitted
8　joint proposed questions, individually proposed questions. I've
9　seen your proposals. I've not had a great deal of time to focus
10　on this. I do want to focus on what I believe was an offer by
11　the government to -- let me hear from the government with
12　respect to copying the questionnaires, photocopying the
13　questionnaires. That's a major problem that requires the
14　utilization of resources that the Court may not have available